IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 18-cr-00405-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. LESTER J. PETTY,

    Defendant.

## PLEA AGREEMENT

The United States of America (the Government), by and through Martha A. Paluch, Assistant United States Attorney for the District of Colorado, and the defendant, Lester J. Petty, personally and by counsel, Jeffery L. Weeden, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

The plea agreement is submitted pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B).

*Defendant's Obligations:*

(1) The Defendant agrees to waive the right to indictment, and plead guilty to a one-count Information, charging the offense of False Statement or Fraud to Obtain Federal Employees' Compensation, in violation of 18 U.S.C. § 1920.

(2) The Defendant agrees, pursuant to 18 U.S.C. § 3663(a)(3), to pay

Court Exhibit 1

restitution to the United States Department of Labor, Office of Workers' Compensation Program (OWCP) in the amount of $105,170.60, which is the amount he received by submitting false claims for reimbursement to the OWCP between July 2011 and May 2018. The defendant waives any defense based on the statute of limitations. The defendant also agrees that for purposes of calculating the U.S. Sentencing Guidelines, the loss amount is the same, $105,170.60. The defendant understands that restitution will be imposed as due and payable immediately after judgment is entered.

(3) The Defendant agrees that the projected offense level asserted by the parties as set forth hereafter in Part VI, is the same position the Defendant will take at the time of sentencing as it relates to the various applicable guideline provisions.

(4) The Defendant is aware that 18 U.S.C. § 3742 affords a Defendant the right to appeal the sentence imposed. Understanding this and in exchange for the concessions made by the government in this agreement, the Defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed is above the maximum penalty provided in the statute of conviction, (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the total offense level is higher than 12 and imposes a sentence above the sentencing guideline range calculated for that total offense level. Except as provided above, the Defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742. The Defendant also knowingly

and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the Defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the Defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the Defendant is released from this waiver provision.

*Government's Obligations:*

(1) The U.S. Attorney's Office for the District of Colorado (the Government) agrees not to pursue any additional charges against the Defendant based on conduct known to date to the U.S. Attorney's Office in Colorado.

(2) The Government agrees at the time of sentencing to recommend a sentence no higher than the bottom of the applicable guideline range, and agrees to consider any arguments the defendant submits for a variant sentence.

(3) The Government agrees that the projected offense level as set forth below in Part VI is the same position it will take at the time of sentencing as it relates to the various applicable guideline provisions.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

3

*First*: The Defendant knowingly and willfully made a false statement or report to the United States Department of Labor, Office of Workers' Compensation Program;

*Second*: The false statement or report was made in connection with an application or receipt of Federal Workers' Compensation Benefits in excess of $1,000; and

*Third*: The false statement or report related to a material fact.

*United States v. Henry*, 164 F.3d 1304, 1308 (10th Cir. 1999); *United States v. Tupone*, 442 F.3d 145, 149 (3d Cir. 2006).

The test for materiality is "whether the falsification has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making the determination required to be made." *Henry*, 164 F.3d at 1308 and n.2 (holding that the test for materiality under 18 U.S.C. § 1001 applies to 18 U.S.C. § 1920).

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 1920 is: not more than 5 years imprisonment; a fine of NMT the greater of $250,000 or two times the gain or loss from the offense, or both imprisonment and a fine; NMT 3 years' supervised release; $100 special assessment; plus restitution, which in this case, is $105,170.60. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. The conviction may also carry with it significant immigration consequences, including removal and

4

deportation depending on the Defendant's status within the United States.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea[s] that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense[s] of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts that do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is July 21, 2011, and that conduct continued through and including June 21, 2018.

The parties agree as follows:

Between December 1, 1993, and September 27, 1997, the Defendant worked as a part-time employee for the United States Postal Service (USPS). Between September 27, 1997, and February 18, 2010, the Defendant worked full time for the USPS. The Defendant retired from the USPS on February 18, 2010.

On April 12, 1998, the Defendant submitted a claim to the Office of Workers'

Compensation Program (OWCP) due to an injury he suffered while on the job. The OWCP determined that the Defendant's accepted conditions were as follows: plantar fibromatosis; tibialis tendinitis; anomalies of foot, not elsewhere classified; and major depression recurrent episode. Between this determination and April of 2018, the Defendant submitted claims for reimbursement of expenses related to his injuries and the majority of these claims were paid by the OWCP.

However, between July 2011, and May 2018, the Defendant submitted 75 claims for reimbursement for his alleged purchase of portable, or mobile, whirlpools. On his July 21, 2011 invoice, the Defendant claimed he was entitled to reimbursement for $6,025.75 for the purchase of a Mobile Whirlpool from Pro-Med Products. The OWCP paid the Defendant $1724.90 on that claim via an Automated Clearing House (ACH) transfer to the Defendant's bank account. From that point forward, the defendant submitted an additional 74 claims for the alleged purchase of a mobile or portable whirlpool from Pro-Med Products in the identical amount of $1916 for each claim. On 60 of these additional 74 claims, the OWCP reimbursed the Defendant in amounts between $1718 and $1724.90 on each claim via ACH transfer to the Defendant's bank account. The OWCP last reimbursed the Defendant for a whirlpool claim that he submitted on April 16, 2018. As of June 14, 2018, 14 claims submitted by the Defendant for reimbursement for Pro-Med whirlpools remained pending. OWCP formally denied these claims on June 21, 2018.

As part of his investigation, Special Agent Wayne Leaders with the United States Postal Service, Office of Inspector General, interviewed a manager of Scrip Company,

located in Bolingbrook, Illinois. Scrip Company bought Pro-Med Products in 2009. The manager searched the company records by the Defendant's name, address, and phone number and confirmed one completed order on April 12, 2009, for medical products unrelated to whirlpools, and one attempted order for a whirlpool and whirlpool chair, which order was not completed. There was no record of any other purchases by the Defendant from Pro-Med Products. Based upon the manager's review of the invoices submitted by the Defendant in support of his whirlpool claims, the manager opined that Pro-Med Products did not prepare these invoices.

When confronted by law enforcement, the Defendant readily admitted his guilt; he admits that he created false invoices to support his claims for reimbursement for whirlpools he did not purchase. Specifically, as to Count 1, the defendant admits that on April 16, 2018, he submitted a false statement to obtain federal employee compensation to which he was not entitled, namely, he submitted a false claim for a mobile whirlpool in the amount of $1916 which he falsely claimed he had purchased from Pro-Med Products when in fact he had made no such purchase. The Defendant agrees that his false statement was material, in that it influenced the decision of the OWCP in making the determination to reimburse the Defendant for an expense the Defendant did not incur.

The OWCP paid the Defendant a total of **$105,170.60** for 61 whirlpool claims falsely submitted by him. The Defendant agrees to pay **$105,170.60** in restitution to the OWCP.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

A. The base guideline is § 2B1.1(a)(2) with a base offense level of 6.

B. Specific Offense Characteristics: Because the loss was more than $95,000, but less than $150,000, an 8 level increase in offense level is applied. § 2B1.1(b)(1)(E).

C. There are no victim-related, obstruction of justice, or role in the offense adjustments.

D. The adjusted offense would be 14.

E. Provided the defendant does nothing inconsistent with accepting responsibility between the time he signs this plea agreement and the time of his sentencing hearing (which inconsistent behavior would include the submission of additional false claims for reimbursement), the defendant should receive a reduction of 2 points for acceptance of responsibility pursuant to § 3E1.1(a). The resulting offense level therefore would be 12.

F. The parties understand that the Defendant's criminal history computation

8

is tentative. The criminal history category is determined by the Court based on the Defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I as the Defendant has no known criminal history.

G. The advisory guideline range resulting from these calculations is 10 to 16 months imprisonment. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 10 months (bottom of Category I) to 37 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

H. Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $ 5,500 to $ 55,000 plus applicable interest and penalties.

I. Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year but not more than 3 years.

J. The Defendant agrees to pay restitution in the amount of $105,170.60.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by

the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 8/5/18         _____
                     Lester J. Petty

10

Defendant

Date: 8/16/18

*[signature]*

Jeffery L. Weeden
Attorney for Defendant

Date: 10/2/18

*[signature]*

Martha A. Paluch
Assistant U.S. Attorney